# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ORANGEBURG DIVISION

| | |
|---|---|
| BARBARA SIDERS, )<br>)<br>　　　　　Plaintiff, )<br>) No. 5:20-cv-01667-DCN-KDW<br>　　vs. )<br>) **ORDER**<br>KILOLO KIJAKAZI, Commissioner )<br>of Social Security,[1] )<br>)<br>　　　　　Defendant. )<br>_____) | |

This matter is before the court on Magistrate Judge Kaymani D. West's Report and Recommendation ("R&R"), ECF No. 16, that the court affirm the Commissioner of Social Security's ("Commissioner") decision denying claimant Barbara Siders' ("Siders") application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act (the "Act"). For the reasons set forth below, the court adopts the R&R.

## I. BACKGROUND

### A. Procedural History

Siders filed an application for DIB on February 22, 2017 and an application for SSI on March 27, 2017, alleging that she had been disabled since June 8, 2016. The Social Security Administration ("the Agency") denied Siders' claims initially on July 31, 2017 and upon reconsideration on November 21, 2017. Siders requested a hearing before an administrative law judge ("ALJ"), and ALJ Suhirjahaan Morehead presided over a

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kijakazi is automatically substituted for Andrew Saul, former Commissioner, as the defendant in this lawsuit.

1

hearing on April 23, 2019, at which Siders and vocational expert ("VE") Dr. Julia Russell testified. In a decision issued on July 8, 2019, the ALJ determined that Siders was not disabled within the meaning of the Act. Tr. 10. The Appeals Council denied Siders' request for review on March 2, 2020, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

On April 28, 2020, Siders filed this action seeking judicial review of the ALJ's decision. ECF No. 1, Compl. Pursuant to 28 U.S.C. § 636 and Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), the action was assigned to Magistrate Judge West, who issued the R&R on May 13, 2021, recommending that this court affirm the ALJ's decision. ECF No. 16. On May 27, 2021, Siders filed an objection to the R&R, ECF No. 17, to which the Commissioner responded on June 4, 2021, ECF No. 18. As such, the matter is now ripe for the court's review.

### B. Medical History

The parties are familiar with Siders' medical history, the facts of which are ably recited by the R&R. Therefore, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Siders' objections to the R&R. Siders alleges a disability onset date of June 8, 2016, at which time she was fifty-nine years old. Siders initially alleged disability due to sciatica, arthritis, depression, and a wrist sprain that never healed. ECF No. 11-1 at 55–56. Siders completed two years of college and has past work experience as a plant merchandiser, retail live nursery specialist, retail associate, and warehouse associate. Prior to her alleged onset date, she worked for a temp agency doing seasonal work in quality control and warehouse work at Amazon and part-time work in the garden shop at Wal-Mart. She allegedly stopped

working at these positions on June 8, 2016 because of her medical conditions. Siders indicated that her conditions have worsened since that time, including in January 2017 and January 2018.

### C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work ("PRW"); and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's

claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Siders was disabled, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Siders had not engaged in substantial gainful activity since June 8, 2016, the alleged disability onset date. Tr. 15. At step two, the ALJ determined that Siders suffers from the following severe impairments: degenerative disc disease of the lumbar spine and degenerative changes of the cervical spine. Id. At step three, the ALJ found that Siders does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App'x 1. Tr. 18. Before reaching the fourth step, the ALJ determined that Siders retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b). Id. Based on that RFC, the ALJ found at the fourth step that Siders could perform PRW in a composite job as a "dispatcher/operations manager, as actually and generally performed; and as a salesperson in horticulture/nursery as generally performed." Tr. 21. Therefore, the ALJ concluded that Siders was not disabled under the meaning of the Act during the period at issue. Id.

## II.   STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III.   DISCUSSION

Siders objects to the R&R on three grounds, arguing that the Magistrate Judge erred in finding that the ALJ (1) properly weighed Dr. Paul D. Weaver's ("Dr. Weaver")

5

medical opinions under the treating physician rule; (2) properly discounted the medical opinion of one-time examiner Dr. Gordon Early ("Dr. Early"); and (3) properly determined that Siders could perform PRW as a horticulture/nursery salesperson. The court discusses each objection in turn, ultimately overruling all three.

### A. Evaluation of Dr. Weaver's Opinion

In her first objection, Siders argues that the Magistrate Judge erred in finding the ALJ had a proper evidentiary basis for assigning the opinion of Siders' treating physician, Dr. Weaver, less than significant weight.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" Social Security Ruling ("SSR") 96-2p; see also 20 C.F.R. §§ 404.1527(c)(2),[2] 416.927(c)(2) (providing that a treating source's opinion will be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[2] The Social Security Administration amended the treating physician rule to eliminate the "controlling weight" instruction for disability applications filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."); 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Siders filed her claim for DIB on February 22, 2017 and her claim for SSI on March 27, 2017. The Social Security Administration's Program Operations Manual System ("POMS"), "which is a primary source of information used by agency employees to process claims for Social Security benefits . . . provides that in a situation where one claim is open when another claim is filed, the rules applicable to the earliest filing date are used." Witt v. Saul, 2020 WL 7047734, at *1 (S.D. Ohio Dec. 1, 2020) (citing POMS DI 24503.050(D)(2)(a) and finding that the magistrate judge erred by applying the amended regulations to the plaintiff's SSI claim, where the SSI claim was filed after March 27, 2017 but the DIB claim was filed before March 27, 2017). Siders' earlier-filed DIB claim pre-dates the amended regulations. Accordingly, the pre-March 27, 2017 regulations apply to the ALJ's assessment of Siders' DIB and SSI claims.

and not inconsistent with other substantial evidence in the record). As recently explained by the Fourth Circuit,

> Section 404.1527(c)(2) sets out two rules an ALJ must follow when evaluating a medical opinion from a treating physician. First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); see also, e.g., Arakas v. Comm'r of SSA, 983 F.3d 83, 106–07 (4th Cir. 2020) (citing Section 404.1527(c)(2) and applying the treating physician rule); Brown v. Comm'r of SSA, 873 F.3d 251, 255–56 (4th Cir. 2017) (same). Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(2)(i)–(6).

Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 384–85 (4th Cir. 2021). In Dowling, the Fourth Circuit noted that, although "an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." Dowling, 986 F.3d at 385 (emphasis in original). In general, courts afford the opinions of treating physicians greater weight "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001)).

7

The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." Mastro, 270 F.3d at 176. SSR 96-2p requires that an unfavorable decision contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight that the adjudicator gave to the treating source's medical opinion and the reasons for that weight. In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence.

On August 31, 2018, Dr. Weaver provided a medical source statement diagnosing Siders with generalized anxiety disorder, chronic bilateral lower back pain with lumbar radiculopathy, and mild depression. Tr. 425. He opined that Siders "would be unable to engage in anything more exertionally demanding than lifting 10 pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools as well as sitting most of the workday with occasional standing and walking." Id. According to Dr. Weaver, Siders would need to take two or three thirty-minute unscheduled breaks and would need to sit at least one hour per eight-hour workday. Id. Further, Dr. Weaver opined that Siders' attention and concentration difficulties may interrupt tasks more than ten percent of the workday. Id.

While acknowledging that Dr. Weaver treated Siders, the ALJ declined to give significant weight to his 2018 opinion on Siders' limitations. The ALJ found that "such excessive limitations are unsupported by the evidence of record as a whole" and Dr. Weaver's own clinical findings, including the absence of "significantly adverse mental

health findings" in his treatment records and the fact that Siders reported riding a bicycle for exercise only three months prior to his opinion. Tr. 24. Upon review, the Magistrate Judge found that the ALJ provided substantial contrary evidence to support her decision to discount Dr. Weaver's 2018 opinion. The Magistrate Judge noted that the ALJ properly explained her reasons for not assigning Dr. Weaver's opinion significant weight, including that "the limitations assessed were unsupported by the evidence of record, inconsistent with his own treatment records (citing to a treatment record three months prior to the opinion), unsubstantiated by his own clinical findings, and inconsistent with additional evidence in [Siders'] case file." ECF No. 16 at 18. Siders objects to this finding, arguing that under the treating physician rule, the ALJ's reasons for rejecting Dr. Weaver's 2018 opinion were improper and not based on record evidence. Specifically, Siders accuses the ALJ of cherry-picking evidence that undermines Dr. Weaver's opinions and ignoring objective evidence consistent with that opinion. Evaluating Siders' objection under the applicable standard of review, the court must determine whether substantial evidence supports the weight the ALJ assigned to Dr. Weaver's 2018 opinion.

The court agrees with the Magistrate Judge that the ALJ provided logically and legally sufficient reasons for assigning less than significant weight to Dr. Weaver's opinion. The ALJ explained that the "record as a whole," including Dr. Weaver's own reports, fails to support the musculoskeletal and mental limitations set forth in Dr. Weaver's 2018 opinion. Tr. 20. The ALJ detailed this evidence of record in her discussion of Siders' impairments and RFC. Siders appears to complain that the ALJ explicitly cited only "2 specific findings" of contradictory evidence—and did not recite the entirety of the inconsistent record evidence—in the paragraph of his decision

9

discussing the weight assigned to Dr. Weaver's 2018 opinion. ECF No. 17 at 2. The ALJ did not err by doing so. First, those "2 specific findings"—that Dr. Weaver's opinion was inconsistent with his own treatment records indicating no adverse mental health findings and that he reported that Siders rode a bicycle for exercise three months prior—are more than a mere scintilla of evidence and alone constitute substantial evidence on which the ALJ could discount the opinion. Second, it is abundantly clear from the surrounding discussion in the ALJ's decision that she did, in fact, rely on the "record as a whole" in discounting Dr. Weaver's 2018 opinion. Tr. 16–20. To accept Siders' argument that the ALJ relied only on "2 specific findings" in rejecting Dr. Weaver's opinion, the court would have to read the ALJ's discussion of that opinion with blinders on as to the rest of the ALJ's decision. The court declines to do so.

In assessing Siders' musculoskeletal limitations, the ALJ referenced a June 2016 visit to a treating neurologist, Dr. Jeffrey P. Smith, who measured Siders' motor strength at a 5/5. Tr. 19. The ALJ also discussed a "benign" July 2017 visit to Dr. Early, discussed infra, wherein clinical findings showed normal spine x-rays, normal range of motion, ability to ambulate without a cane, and 5/5 motor strength. Tr. 20. The ALJ additionally cited an August 2017 visit to Dr. Weaver, where he assessed Siders' pain as "stable." Id. As the ALJ specifically noted in her consideration of Dr. Weaver's 2018 opinion, Siders reported to Dr. Weaver in April 2018 that she was riding a bicycle for exercise. Id. The ALJ continued to explain that, after the August 2018 visit at issue with Dr. Weaver, Siders saw Dwight A. Jacobus, D.O., a pain specialist, and reported an improvement in symptoms in September 2018. Id. She returned to Dr. Jacobus in November 2018 complaining of left shoulder pain resulting from "splitting wood"—

indicating her engagement in significant physical activity. Id. The ALJ noted that Dr. Jacobus's January 2019 treatment records reflected no new complaints from Siders, and Dr. Jacobus proffered no limitations or restrictions. Id. Finally, the ALJ acknowledged that both state agency physicians determined that Siders could perform work that exceeded Dr. Weaver's limitations.

Concerning Siders' mental health limitations, the ALJ noted that the record reflects diagnoses of depression and anxiety. However, the ALJ pointed out that Dr. Weaver assessed Siders' depression as no more than "mild" in severity in June 2017. Tr. 16 (citing Tr. 390). The ALJ further noted that Dr. Weaver indicated that Siders was not prescribed any medications, nor was she recommended any psychiatric care. Id. Dr. Weaver further indicated that Siders had an "adequate" ability to complete basic activities of daily living and to complete complex tasks. He also observed that Siders maintained "good" attention and concentration and had a "good" ability to relate to others and to complete simple, routine tasks. Id. Moreover, in a July 2017 assessment with James N. Ruffing, Psy.D., a psychological consultative examiner, Siders exhibited "normal mental health functioning," and she remained focused with normal cognitive processing speed. The ALJ additionally cited Siders' own reports in assessing her mental capabilities, including that she shops for household needs, manages personal finances, prepares simple meals, and performs household chores.

Overall, the court finds that the ALJ did not err in assigning less than significant weight to Dr. Weaver's 2018 opinion due to contrary persuasive evidence. The ALJ did not cherry-pick facts but rather addressed evidence both consistent and inconsistent with Siders' allegations of disability. And while Siders is correct that some evidence on the

11

record supports Dr. Weaver's 2018 opinion, there is also substantial record evidence, discussed above, that is inconsistent with that opinion. It is beyond the purview of this court to reweigh the evidence considered by the ALJ. The court finds that the ALJ relied on substantial evidence in assigning Dr. Weaver's opinion little weight, and the court's limited inquiry ends there. The court adopts the R&R's opinion finding that the ALJ properly weighed Dr. Weaver's statement.

### B.  Evaluation of Dr. Early's Opinion

Siders next objects to the Magistrate Judge's finding that the ALJ properly weighed Dr. Early's opinion.

Unlike Dr. Weaver, Dr. Early qualifies as a consultative medical source, not a treating source, such that his opinions do not implicate the treating physician rule and are not entitled to controlling weight. Nevertheless, even where an opinion is not entitled to deference under the treating physician rule, the ALJ must still apply several factors to determine the weight that the opinion should be afforded. 20 C.F.R. § 404.1527(c)(2). Those factors are: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, that is, the extent to which it is consistent with medical signs and laboratory findings, (4) the consistency of the opinions with the record and other opinions, (5) whether the physician is a specialist, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)–(6).

The Fourth Circuit does not require an express discussion of every factor, and this court has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his

decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010). A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 624 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

On July 5, 2017, Dr. Early performed a consultative examination of Siders. Tr. 399. Dr. Early found Siders to be "moderately to severely depressed." Tr. 400. In his musculoskeletal examination, Dr. Early noted that Siders' "gait is very stiff and she forward flexes 10 degrees when she walks. She is just stiff and has a hard time changing positions." Id. Dr. Early made the following assessment:

1. Low back pain with left sciatica and weakness in the left foot. This woman is very stiff and she would have a hard time doing many different jobs. She gave me a good exam today. She is a poor candidate for heavy or medium work. Many light jobs would not be suitable.
2. Neck pain with rather unremarkable x-rays. She should avoid prolonged upper gaze and frequent use of hands above shoulders.
3. Left wrist pain most likely is resolving De Quervain's tendonitis.[3] This does not majorly affect her employability.

Tr. 400–01 (footnote added).

---

[3] De Quervain's tendinosis occurs when the tendons around the base of the thumb are irritated or constricted. The word "tendinosis" refers to a swelling of the tendons. Swelling of the tendons, and the tendon sheath, can cause pain and tenderness along the thumb side of the wrist. This is particularly noticeable when forming a fist, grasping or gripping something, or when turning the wrist. See OrthoInfo, DeQuervain's Tendinosis, https://orthoinfo.aaos.org/en/diseases--conditions/de-quervains-tendinosis/ (last visited September 29, 2021). In his examination of Siders, Dr. Early noted that she tested negative for De Quervain's but he was "wondering if that is what she has had over the last year." Tr. 399.

The ALJ determined that clinical findings from Dr. Early's examination did not support the limitations set forth in his opinion. Specifically, updated x-rays of the cervical spine were "normal," and a physical examination reflected "normal range of motion of the lumbar spine, shoulders, wrists, knees, and hips, with motor strength measured at a 5/5 throughout the upper and lower extremities." Tr. 19–20. Further, although Siders complained of left-hand pain, updated x-rays of the left wrist demonstrated no more than "mild arthritis" of the left thumb, and despite a stiff gait, Dr. Early noted that Siders did not require a cane to ambulate. Id. Thus, the ALJ found that Siders did not have limitations of the extent described by Dr. Early and did not afford his opinion significant weight.

The Magistrate Judge found that the ALJ "provided a well-reasoned explanation for the weight she gave to the opinion of this one-time examiner," and that her "findings were supported by substantial evidence and were reached through the correct application of the Social Security rules and regulations." ECF No. 16 at 19. Siders objects to the R&R on this ground, arguing that the ALJ "ignored the multitude of positive objective findings and only provided a general statement of inconsistency." ECF No. 17 at 5. The court disagrees.

The R&R correctly found that the ALJ properly considered Dr. Early's opinion regarding Siders' limitations. As a non-treating physician, Dr. Early's opinion is not entitled to controlling weight. Moreover, the ALJ did not simply provide "a general statement of inconsistency" in rejecting Dr. Early's opined limitation, as Siders contends. Id. Rather, the ALJ properly considered and discussed the relevant factors in assigning less than significant weight to Dr. Early's opinion. As the ALJ noted, Dr. Early only

examined Siders once, and his opinion is inconsistent with his own clinical findings, which showed normal x-rays, range of motion, and motor strength; only mild arthritis; and the ability to ambulate without the assistance of a cane.  The ALJ further explained that Dr. Early's opinion is unsupported by the evidence of record as a whole, which the ALJ details in her comprehensive explanation of her RFC finding.  The court need not reiterate that discussion in its entirety here.  Suffice to say, the ALJ cites substantial evidence to support the weight she assigned to Dr. Early's opinion, and her thorough decision assures the court that the ALJ did not dredge up specious inconsistencies in considering Dr. Early's opinion.  Siders' objection essentially asks the court to reweigh the evidence that was before the Magistrate Judge.  However, the court's role is merely to determine whether the ALJ's determination "is supported by substantial evidence," which does not contemplate "reweigh[ing] conflicting evidence" or "substitute[ing] our judgment for that of the [ALJ]."  Johnson, 434 F.3d at 653.  In any event, the court agrees with the Magistrate Judge that the ALJ properly concluded that Dr. Early's opinion did not preclude her ability to perform all light work because Dr. Early only noted that "many"—but not all—light jobs would be unsuitable for Siders.  Tr. 19.  As such, the ALJ's RFC determination did not necessarily conflict with Dr. Early's recommended limitations in that respect.  Because the court finds that the ALJ's evaluation of Dr. Early's opinion is based upon a correct application of the law and is supported by substantial evidence, the court overrules the objection and adopts the R&R's finding with respect to Dr. Early's opinion.

### C. Siders' PRW as a Horticulture/Nursery Salesperson

As a third objection to the R&R, Siders argues that the Magistrate Judge erred in finding that the ALJ properly evaluated the demands of Siders' PRW as a horticulture/nursery salesperson in determining that she remained capable of that work. ECF No. 17 at 5.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if she is capable of performing her PRW either as she performed it in the past or as it is generally performed in the national economy. SSR 82-61, 1975–1982 Soc. Sec. Rep. Serv. 836 (1982). The claimant bears the burden of establishing that she is incapable of performing her PRW. See Pass, 65 F.3d at 1200. When deciding whether an individual has the capacity to perform a past job, the ALJ must make the "following specific findings of fact: (1) A finding of fact as to the individual's RFC; (2) A finding of fact as to the physical and mental demands of the past job/occupation; [and] (3) A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62.

The ALJ determined that Siders' disability claim failed at step four because she could perform PRW "as a dispatcher/operations manager, as actually and generally performed; and as a salesperson in horticulture/nursery as generally performed." Tr. 21. The Magistrate Judge found that, for reasons explained in the R&R, the ALJ erred in finding that Siders could perform her prior dispatcher/operations manager job as actually and generally performed. However, the Magistrate Judge found this error harmless because the ALJ, based on testimony of the VE, alternatively found that Siders could perform PRW as a horticulture/nursery salesperson. ECF No. 16 at 23 (explaining that

16

"There is no requirement that a claimant must be able to perform all past relevant work; so long as she can continue to perform at least one job, she will be found to be not disabled.") (internal citations omitted).

Siders objects to the Magistrate Judge's conclusion that the ALJ properly found that Siders could perform PRW as a horticulture/nursery salesperson. Siders complains that the ALJ failed to discuss the physical and mental demands of this PRW, as required by SSR 82-62. Siders avers that remand is necessary to ensure that Siders' ability to perform PRW as a horticulture/nursery salesperson is properly evaluated. Id. The court disagrees.

In 2003, the Social Security Regulations were amended to expressly permit ALJ reliance on the testimony of a VE in determining whether a claimant is able to perform her PRW. See 68 F.R. 51153, 2003 WL 22001943 (Aug. 26, 2003) (adding § (b)(2) to 20 C.F.R. § 404.1560). Section (b)(2) provides:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2).

In her determination of Siders' ability to perform PRW given her RFC, the ALJ explicitly relied on the testimony of the VE. Specifically, the ALJ stated that

> [t]he vocational expert testified the claimant has additional past relevant work as a salesperson of horticulture/nursery products (DOT #272.357-022), which is classified as a semi-skilled labor (SVP 4), at light level of physical exertion (medium as performed by the claimant). In comparing the claimant's residual functional capacity with the physical and mental demands of this past relevant work as generally performed [sic].

Tr. 22. The ALJ's analysis of Siders' ability to perform her PRW as a horticulture/nursery salesperson was "more than sufficient" because it properly relied on the VE's testimony. Thomas v. Saul, 2019 WL 3671791, at *4 (D.S.C. July 26, 2019) (finding an ALJ's decision as to a claimant's PRW "more than sufficient" because the AJL cited to the VE's testimony and clearly relied on it in his PRW determination); see also Hamm v. Colvin, 2016 WL 536742, at *4 (D.S.C. Feb. 11, 2016) (holding that under the 2003 regulation amendments, an ALJ may rely on the testimony of a VE in determining whether a claimant is able to perform PRW). The VE testified that work as a horticulture/nursery salesperson is classified as light and semi-skilled and that Siders could perform it as generally, not actually, performed in light of her RFC. ECF No. 11-1 at 43. Thus, the court finds that the ALJ satisfied the requirements set forth under SSR 82-62, overrules Siders' objection, and adopts the R&R's conclusion on this matter.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the Magistrate Judge's R&R and **AFFIRMS** the decision of the Commissioner.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 30, 2021
Charleston, South Carolina**